May it please the Court, I would like to begin by addressing the different format limitation that's included in appeal claims for all three patents that are subject to this appeal. For example, claim one of the 170 patent recites a device I'm sorry to interrupt you so early, but is there a reason why our rules weren't followed and there aren't, in the start of the brief, we don't see a copy of the claims? Not that I can explain, Your Honor. I just recommend that it's very convenient and helpful during argument to have access to these things, especially when it's so important in this case, it's the first thing you talk about. Sure, understood and we apologize for that. So claim one of the 170 patent recites a device with two output formats, an original format and a different format. When movement of the device is below a threshold, the original format is provided to the driver. When movement of the device is above a threshold, the output is provided to the driver in a different format. Where is that disclosed in your specification? In the specification, well, it's in the claims, which are part of the specification. Were those the original claims that were filed with the specification? But it's also described in the specification as well and I... That's the answer to my question. Yes, Your Honor, I want to... Do you know if those claims were amended and added to the patent or they originally filed claims? I would have to check that and I don't have the answer to that. Okay, so then you said it's in the specification. Could you point me to where it is? Yes, and if I can reserve that for rebuttal to be able to come back to you with a cite to the specification. You don't know where it is in your specification? The... In terms of... I saw examples. Yeah, there are a couple of examples that talk about disabling the phone, right? So there's... So maybe that's a different format? There are also different formats that are described as being less distracting throughout the... I have read your specification three times and I can't find it. So I think it would be important to me that you find it. It's fine if you want to give it on rebuttal.  The... So in terms of... The board determined different format includes muting based on Claim 14 of the 170 patent. The board further found that inhibiting an output alerting signal entirely in the Hardawin reference was muting the device as recited in Claim 14. But those findings are inconsistent with the language of Claim 14 and Claim 1. The only way to read muting the device in the context of... When you say finding, just to be clear, one of them is actually not a finding. It's a legal conclusion, right? Yes. It is a legal conclusion in terms of claim construction. And that it's... And then the other question about what the priority is and whether... Exactly. Yes. And the... So it's inconsistent with the claim language in both Claim 1 and Claim 14. And the only way to read muting the device in the context of Claim 14 as an example of providing the output to the driver in a different format is if muting is read to mean soften or muffle the sound, which would mean it would still provide some output to the driver. What's the ordinary meaning of muting? What's the... Ordinary meaning of muting. I think the ordinary meaning is turning it off or making it softer. It could be either, right? There are multiple... And the parties did... The board adopted a construction of muting that included that means soften or muffle the sound of a thing or person. And that was disincluded on dictionary? Is that right? These are all extrinsic evidence. Which we review for substantial evidence, right? Whether it's clearly erroneous. Yes, but the finding would be that. But in the context of the claim as a whole and where the board went astray was by adopting an extrinsic evidence definition that didn't fit the intrinsic evidence of the claims. What is it about the intrinsic evidence that you think changes the definition of muting to exclude silencing, which I take it is your position? Yes, because there still has to be... The claims require providing an output to the driver. They still require providing an output to the driver. So the way to read them harmoniously is that muting has to be of an existing output. There still has to be some output that's provided to the driver. And if the Hardo in reference, what it describes, was completely inhibiting the output so that no output's ever provided to the driver and it doesn't fit Claim 1 and Claim 14. But if we read the patent specification to be really directed to a conception of disabling the telephone signal, you know, once a certain threshold is met, then that's entirely consistent with this notion of muting the telematic devices presided in this claim. The way I would answer that is that disabling, completely disabling, no output's provided. So that... What if your specification, the only change it suggests as a different format is disabling? Or it doesn't use the language different format, but the only thing it teaches is disabling. It doesn't teach doing anything else to the input. Then wouldn't we understand then that this is a fair reading? It's not... With the specification? Sorry. It's not the input that we're focusing on. It's the output. Well, that's what I'm talking about. So what I'm trying to say is I read your specification. It says there's original output and the only thing we're going to do to change the output is disable it. I don't see any other description of changing the output in response to determining, for example, that the driver is driving. And so I'm having a hard time understanding based on why the interpretation of the board isn't consistent in any way with the specification. In fact, it seems quite consistent with the specification. I just want to make sure you understand my views. Yes. I do understand and will do my best to address it with my rebuttal time. The... Another thing about the claim, the claim to output, the claim speaks in terms of the telematic device having an input and having an output. And I'm not really sure what to think about the term having. In other words, it could well be that we're talking about a telematic device that has the capacity to input something into it and then also the capacity to produce an output. And so we could... This claim really could be more directed to just the abstract... I don't hate to say abstract idea, but just the idea of a telematic device having an input and an output, not necessarily a claim in which the telematic device is being put into action and necessarily always producing an output. I'm not sure the claim is actually written that way. To look at claim one for an example, it is requiring that the output be provided to the driver in a format that is different than the original format. And the... Yes, but this gets us back to the problem of the fact that providing the output to the driver in a different format can be, among other things, muting the telematic device, which then gets us back to the spec and diagrams, which plainly show the notion of disabling the telephone. But that wouldn't be an output that's provided to the user. If the telephone is completely disabled, it may fit other... For example, claim eight recites where the audible tone is prevented from being provided to the driver. So the claim one and claim 14 require that output to be provided to the driver in a different format than the original format. No, obviously claim drafters can write claims any old way they want to. And, you know, it could well be that this claim drafter chose to think about providing an output in a different format as being, you know, silencing and disabling the telematic device. But then our position would be that there is no output that's provided. What about this, though? I mean, I understand your position. There is no output if it's disabled, is what you're saying. But the specification doesn't disclose any other way of muting. It doesn't go into the technical details of how the system is going to work when it mutes. And so with that, why wouldn't... The only thing it actually does disclose is disabling. And so why wouldn't that... And why do we worry about the technical details of exactly how the muting occurs when there is no description at all in the specification about those technical details? I do believe that the specification does describe, you know, customization of outputs to reduce distractions in a way that, you know, that voice feedback or the tones or the visual display can be changed. It's at a very high level. It says you can change this, I guess. I don't even know if it says that. But it doesn't, you know, say, okay, this is how we're going to do it. Yeah, I believe that, you know, column 20, lines 43 to 53, column 20, line 60 to column 21, line 2. I'm not going to be able to keep up with you that fast. My apologies. Yeah, so these are... These are in our brief at page 23. What are you saying these things say? You know, that the driver can customize the voice used in any voice feedback or the tones used or the tactile response or the visual display of any... The driver modifying these things isn't the same thing as... It's in the system. What you've got claimed is that there's an original output and then a different output in a different format, or a different format of the same output is going to be provided in response to some... sensing some condition. So I don't know what those things about the customer being... or the driver being able to customize things. I'm not sure if that's responsible. No, it's to have outputs provided in original and different formats to make them less distracting. And the... And those examples from the specification are cited at page 23. Would you want to tell us which the best one is? So this is now you're answering the question that you said you were going to... No, no, no. I'm trying my best to answer.  So if you want, you can do that now? Yeah, and I may supplement it on rebuttal too. If I could, I'd like to turn to quickly to a... Just to be clear, what I want you to be able to do is tell me exactly where to look and we'll read it together. Okay. Okay. And I'd like to turn to the... Claim 31's... changing an original input interface to an alternative input interface. And there's no dispute that hardening contains a one-sentence description of a keypad. The board acknowledges that keypad doesn't physically change, but they're concluding it could somehow be both an original and a changed alternative input interface. Different than the original input interface. Based on Hardaway disclosing a keypad that enables operations below a predetermined speed and disables operations above a predetermined speed. To reach that conclusion, the board construed Claim 31 incorrectly to not cover an interface that was partially functional. It ignored the use of accessible in the claim that the input interface had to be accessible to the driver. And in this context, accessible means something that is usable. And that's supported by... Why is that necessarily the case? Maybe you're just about to tell me something. I am, Your Honor. Thank you. As used in the specification, Claim 12 and Claim 31, they all require the interface to be capable of being used and at least partially functional. And that is Claim 12 in particular recites that the... Claim 12 of which patent? The 170 patent, yes. Thank you, Your Honor. Apologize. And that it... You know, that Claim 12 recites having visually accessible information change to verbal announcements. So that implies that accessible means that those are usable and able to be seen. So that's one embodiment. Yes. Encompassed by Claim 1. That's what we're saying gives insight to what accessible means. What were you citing for that again? What were you citing for that? Claim 12 of the 170 patent.  And the... I'd like to also turn to... If there are no further questions on the... You have seven seconds of time.  You can say whatever... What limitations did you want to say something about? It would have been Claim 10 providing the driver signal based on... Providing a signal to the user. Yeah. All right. We'll give you a little bit of time on your part. Thank you.  May it please the court. My name is Christopher Smith and I'm arguing on behalf of the Appellee Ford Motor Company. And I was going to address a couple of issues with different format first. As the court pointed out, there's no disclosure of this format. And the primary disclosure in the specification that would even be... appears to be relevant is disabling a phone, which is, again, would be cutting off the sound. As far as... Is there some disclosure in the patent about reducing the... I don't know, the level of distraction that a phone would be conveying to a driver? Absolutely. And one of the... And so maybe one way of doing that, accomplishing that, would be muting the phone while at the same time maybe having some kind of visual indicator on the screen of the phone that a phone call is coming in. Is that disclosed in the specification? I don't believe it's disclosed like that. However... Claim 14. So Claim 14, this is one thing I would say on that point. Claim 14 has various examples of what it means to be a different format. One of them is the muting a telematic device. It also has blocking video output permitting audio output. So for the purposes of different limitations at different meetings, I would suspect that muting the telematic device of Claim 14 is different scope and a different limitation than blocking video output but permitting audio output. And so again, I would submit that in this case, and because there's one use of the word mute in the whole patent, and it's not inconsistent with what the board found using the dictionary definitions, that muting could be completely deadening sound. I found three uses of it. Of what? I found three uses of muting, but I don't... Well, in the claim... But in Column 8, and Column 15, and Column 16. Okay. I'm looking at Column 8 specifically where it talks about muting flashing lights, buzzers, ringers. Do you think muting could be both sound and video? Actually, I do. It could because it talks about muting flashing lights, for example. I guess whether it's video or not, you could debate, but it could be visual, I guess, is what I'm saying. But clearly, based on the dictionary definitions which the board relied on, which, you know, I believe is a substantial evidence for purposes of finding the intricate evidence, the board was correct in finding that the planar immunity of muting would include deadening the sound. And there's nothing that I see in the specification that would artificially limit it beyond that. As far as the having an output, which Judge Chenerey is... Again, if you have a stereo system with a speaker, it has an output, whether it's on or not. The speaker is the output. And so I think in this context of these claims, that's what we're dealing with here. There is an output. Whether or not it's activated or not will depend on, obviously, the threshold being met. And if it's not activated, obviously it's muted. And I think that's consistent with what muting means based on the board's findings. I'd also point out that Claim 14, one of the other examples of a different format, is changing the volume, which seems to me to encompass this idea of softening the sound, affecting the sound, as opposed to completely killing the sound, which would be muting again, which would be consistent with more of a reading of muting. And so, again, as our... Well, muting can be both, right? Muting can be both. A violin has a little thing that you can put on the bridge and it will make the violin softer. It's called a mute. Correct. I agree with that. However, typically, if you think of a stereo, it's really in that kind of realm, right? We're in sound, audio analysis, audio output. It's a phone, maybe, versus a stereo. But you hit a mute button, it kills the sound, typically. It can be both, though, right? But it could be both, absolutely. And I'm not arguing that it can't be both. The appellant is arguing that it can only be one. And we fundamentally disagree based on the record and based on the extrinsic evidence. And again, you know, and I know this is a dispute, but claim 14 seems to be really the only clear indication of what this different format limitation even means. I mean, it doesn't show up in the patent. We can kind of imply that we're discussing some of these things like disabling a phone. It's talking about different format. But ultimately, the only real place in this record where different format is addressed by the patent owner is claim 14, and it says muting the device. So we would submit that the board was correct in construing claim one and the related claims of similar language to include muting for different format. Did I remember correctly that the board, in looking at, it relied on claim 14 to say muting is an example of a different format, and then it relied on the dictionary to say that muting could include both turning it down to zero and also making it softer? That's correct, Your Honor. I mean, basically, I guess it's a construction within a construction because, again... I'm just relying on extrinsic evidence, which we review for substantial evidence in this case, right? Extrinsic evidence, yes. And it had to because the record... These claims have a lot of terms in them. Another one that's at issue here is telematic device. They have a lot of terms that have very limited or no real explanation of what they are. But a consistent theme in this appeal and this whole IPR proceedings event is the patent owner trying to, what I say, artificially narrow the claims to avoid the prior art, and I think this is another example of that. And we submit that there's nothing in the record that should preclude this court from finding that muting should be given this kind of plain-oriented meaning, which I agree could be both softening or deadening. And I don't think there's any dispute and the substantial evidence shows that Hardaway would at least disclose deadening, the sound, in that muting context. So then Claim 31. I'd like to turn to Bertha. First of all, again, we're talking about an input interface and an alternative input interface, other terms that don't really show up in the patent, in this form, at least. As far as accessibility, our read on it is that accessibility is it's accessible to the driver and the car. So if you've got a phone and there's a keypad there, like Hardaway, it's accessible to the driver, whether you can make a call from it or not. Claim 12 talks about, I think, making a visual signal accessible to the driver, a visual display. I'll find it here. But again, it's accessible. I mean, if you're in the car, it's accessible in that case. I don't think it really changes anything from our reading. I mean, just like the keypad's accessible, and you can see it and you can touch it, what have you, either way. Because all it's got to do is be accessible in the vehicle. Now, I don't think there's also not a dispute, and the board found substantial evidence, that Hardaway discloses... I guess the question on 31 really comes down to what does it mean to say an alternative input interface? If you've got the same phone, and it goes from being on to being off. Is the off character fairly characterized as an alternative input interface? And if so, why? Well, I think it is for a couple of reasons. One, as the board found, and as supported by unrebutted expert testimony, when you inhibit a call origination, you're necessarily... you're inhibiting the ability to make a call, right? So if there's a button that says call, for example, let's use that as an example, when it's fully functional, you could hit that button and it would send out a signal. When it's not, that button's not going to work. Now, literally, Hardaway says inhibiting making a phone call, it doesn't necessarily say that you inhibit everything. Okay, now the board kind of looked at both sides of this, because I know our expert talked about partial disablement versus full disablement. Like the end button? Yeah, like the end button. Like, for example, if a call came in, there's nothing in Hardaway that says that the button that answered it would be disabled. It only says that the ability to originate a call, make a call, would be disabled. But it doesn't state the contrary. It doesn't address the point that the opponents are making, which is to say that this dead phone is not an alternative interface. That's their argument, as I understand it. That is correct. And Hardaway does not directly speak to that, right? Well, I would say that the 170 patent has, there's some corollaries in the 170 patent that speak to it. For example, first of all, now again this is in the context of the output, but we know from claim 14 that the idea of deadening something, disabling something can be, for the output side, would consider being an alternative. Different form of alternative interface, we're kind of two sides of the same coin, right? They're different terms, but we're kind of talking about something different happening. This case is happening with the interface with the driver, in this case to make a phone call. On the output it's sound. So the patent doesn't specifically, per se, directly to disable the output. What's interesting, I think, is it's not so much that the interface is, I guess what you're saying is it's as if the patent said changing the status of the interface to an alternative status. Is that your argument? Yes. So you're reading the language, said input interface of the alternative input interface being changed as a change of status. I think that's correct. I mean, again, if you've got, if the interface is the keypad, and we can agree on that, if I'm in my car and I have a keypad that I can dial, okay, it's fully functional. I can do whatever I want. So it's an interface of a fully functional keypad. Now you can do something. Whether you disable all of it or you disable part of it, it's changed. It's changed from a fully functional keypad to a semi or no functional keypad. So the interface with me has changed. That's how I would explain it. And I would also point to column 20 of APPX1293, it's around line 28 or so to 40, it talks about making phone calls, dialing numbers, these kind of things that you would do with a keypad. And at the end it talks about, so at least under some conditions, certain communications to and from the driver may be restricted or suppressed. So, again, I would say this seems to at least imply that activities like dialing a phone number could be suppressed in certain circumstances, which is kind of effectively what we're arguing with respect to Hardaway and with respect to what our expert testified to and with respect to what the board found the substantial evidence showed from Hardaway. So I guess you're saying the specification is contemplating an altered state of the input interface. I mean in terms of functionality. And it isn't speaking so narrowly as to demand that there still be some functionality of the interface in all states. Yes, I agree with that. Again, at some level we are left to kind of interpret this because the words alternative input interface do not show up in the patent, so we have to kind of take a leap. But I think it does imply that when it talks about functionality like dialing a phone number and it talks about suppressing certain functionality like that. I would add, though, that we submit that completely disabling the functionality of the keypad would be an alternative interface, but we also still raise what our expert opined to which was not rebutted, which the board also looked at, which is this idea of a partial disablement of the keypad, which makes a lot of sense because, again, Hardaway teaches inhibiting originating a call. So there's going to be some buttons and some functionality on that keypad that would be inhibited because they don't want you to make a phone call, but it doesn't necessarily disclose that everything's got to be disabled. There are other functionality that could be on a phone that may not be disabled, which is what our expert described in his obviousness declaration in which patent order did not rebut, in which the board also looked at. So I would also— Was the board adopted? Well, the board—I got it. The board did say in its order, and so I'm looking at APPX1256. The board did talk about, you know, petitioner relies on Hardaway's wireless telephone fully enabled keypad and disabled or partially disabled keypad for disclosing the recited telematic device, original input face and alternative input interface, respectively. And then the rest of this discussion is talking about it generically. So my read on this is the board is defining this disabled keypad as being disabled fully or partially, and then it goes on to talk about, you know, all the evidence about disabling the keypad and whether it meets the limitation. So our view is the board did rely on it. Yeah, but I don't think you can point me to something that makes that clear. Other than the board appearing to define disabling to mean both. Defining your argument to be that, yeah. But the board never says that it rejects that argument. It never says—you know, it just goes on to discuss the evidence and discuss Mr. Andrews at length, who was the one that, in his declaration, had this opinion about the partially disabled keypad. With that, I have no other issues. If the court does not have any other questions, I would ask that you affirm the board's decision on these three IPRs fully. Okay, thank you. All right. We'll give the appellant two minutes. Briefly, the partial functionality theory that was referenced was never adopted by the board, and it was based on another reference that was not included in the ground. It was hard-won only, but it added the boys' reference, which was never adopted by the board. To get back to the question about the partial functionality theory, the places in the specification, in addition to what I had described earlier, in the 170 patent, column 16, lines 49, 50 to 51, it talks about changing the volume on the radio. Does it say that it's— Changing the volume on the radio. That's line 50 on column 16. Yeah, it's, you know, such as modifying the cabin temperature, changing the volume on the radio, extending the sun visor, etc. It doesn't sound like it's doing that in response to detecting anything. It's— It talks about modifying the cabin temperature. Yes, but generally, throughout the specification, what it's talking about is basically, and again, this is also in column 20, about customizing inputs or outputs to the devices. Column 20, lines 24. These seem to be conditions that would trigger the disabling of the vehicle telephone. But it's also— That's how the sentence starts. In addition, other sensors could also be provided to disable a vehicle telephone. It references disable, but in other places in the spec, it talks about how various communications, and this is in column 20, lines 25, 26, and 27, various communications or inputs or outputs to or from the devices in the vehicle may detract differently from the driver's attention. And then if you go further down in column 20 to lines 62, 63, where it says the driver can select the type of feedback provided by the system, audible, visual, tactile, etc., and when the feedback is provided, for example, not during telephone call. Do you agree that this language, which you referred to before, about the driver can select the type of feedback, doesn't say it's going to select the type of feedback for the different format, or it just says they can select the type of feedback. It doesn't ever say we're going to have a different output based on certain conditions being met. It doesn't say that, but in context, a person of skill would have understood that in light of the claims and the specification the way it's written about customizing the type of— Do you have any place where it says, many times it says, in response to sensing something, we will disable the telematic device. Is there any place where it says, in response to something, we will do something different than disabling? Well, that's where I pointed to in column 16, the modify—changing the volume on the radio was an example. I don't read that as saying changing the volume on the radio. If a person is changing the volume on the radio, then that's a condition that will trigger the disabling of the telephone. That's how I read that sentence. Well, changing the volume could be lowering it as opposed to— When the user is changing the volume on the radio— It's the system. Then the sensor will say, ah-ha, the driver is distracted. The driver is messing around with the radio volume. I'm now going to disable the telephone. Is there anything where it says, ah-ha, the driver is distracted, we're going to do something other than disabling? That's the big question. Well, that, again, is in column 20 with, you know, customizing the response to reduce distraction or annoyance caused in the system. Okay. Thank you. I think we have your cases submitted.